**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 06-CR-30049-WDS** |
| | ) | |
| **GARY E. PEEL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

Before the Court is defendant's motion in limine (Doc. 28) to which the government filed

a response (Doc. 34).  The Court, having previously indicated that the motion is really more in

the nature of a  motion to suppress, held an evidentiary hearing on the motion and took the

matter under advisement pending further briefing by the parties.  The post-hearing briefs have

now been filed and the matter is ready for ruling (See, Docs. 46 and 47).

In his motion the defendant asserts that on January 31, 2006, he was approached by an

Assistant United States Attorney and two Special Agents of the Federal Bureau of Investigation

at a restaurant in Glen Carbon, Illinois.  He was advised that he had been implicated in criminal

activity, and after briefly being questioned in a parked car at the restaurant, he drove himself to

the United States Attorney's Office in Fairview Heights, Illinois where he agreed to cooperate

with the government.   At that time he entered into a standard proffer agreement used by the

United States' Attorney's Office, which detailed the nature of the cooperation agreement

(Exhibit 1 to Doc. 28).  The defendant gave two statements to the government.  The first

occurred on January 31st, as detailed above, and the second on February 14, 2006.

The defendant claims that he cooperated fully and truthfully answered all questions posed

to him to the best of his ability.   He asserts, therefore, that under the terms of the cooperation

agreement (the proffer letter), this Court should enter an order precluding the government from

introducing in its case in chief any and all oral statements and admissions made by the

defendant.  In addition, the defendant seeks to preclude the admission of tangible items which

Peel produced in accordance with his cooperation agreement.  In addition, the defendant seeks to

preclude the government from introducing any of the tangible items which were produced by

Peel as part of his cooperation agreement.

<u>EVIDENCE ADDUCED AT THE HEARING</u>

The government introduced the testimony of two Special Agents of the Federal Bureau of

Investigation, Jonathan Kelly and Melanie Jiminez. Special Agent Kelly testified that he

received a call on January 20, 2006, from Assistant United States Attorney Jerry Burke about a

possible bankruptcy fraud case involving photographs being placed in the mail.  At that time, the

criminal division of the United States Attorney's Office became involved in the investigation.

The investigation revealed that on January 20, 2006, the defendant and his former wife, Debbie

Peel, had a meeting where four color photographs of Debbie Peel's sister, which had been

photocopied on a piece of paper, were discussed.  Debbie Peel then contacted the United States

Attorneys Office.  She then met with Assistant United States Attorney Kevin Burke and Special

Agent Kelly.  Kelly took custody of the photocopied photographs at that time.

The defendant acknowledged at the January 31, 2006, proffer that he had placed the

photocopied photos in a manilla envelope marked"Confidential. Debbie Peel," in her mailbox.

There were also legal documents placed in the mailbox of Debbie Peel.  The manilla envelope

contained nude photographs of Debbie Peel's sister, Donna Rogers.   Debbie Peel agreed to

2

consensual monitoring of telephone conversations with the defendant and the first recorded call occurred on January 25, 2006.  The photographs and the bankruptcy action were both discussed in this call and the two agreed to meet on January 31st where the defendant was to give Debbie Peel the photographs in exchange for a signed settlement agreement.[1]  This recorded conversation between the defendant and Debbie Peel included a plan that  both would view the original photographs, they would then be placed an envelope, which was to be sealed and both would sign and date the envelope.   Based on the recorded conversations, the government obtained two anticipatory search warrants, one to search the defendant and the other to search his vehicle.  The warrants were based upon the defendant showing up at the pre-arranged meeting place with Debbie Peel, at Hardee's in Glen Carbon, Illinois.  There was also a separate search warrant for defendant's law office at the Lakin Law Offices in Alton, Illinois.

The January 31st meeting occurred, and their approximately 45 minute discussion was recorded on a digital recorder concealed in Debbie Peel's purse.  As soon as the defendant left the Hardee's he was approached by FBI Special Agents Kelly and Tyrone Forte.   The defendant was asked to voluntarily speak with AUSA Kevin Burke.  He agreed, and was given an opportunity to call an attorney.  He called several attorneys.  He was asked to turn over the pictures of Donna Rogers which he had with him.  His answer was that if he "hypothetically" had pictures of a "hypothetical nude girl" he would decline to hand them over at that time.   With that response, they executed the warrant for the search of his person.  At that point, Peel reached into his pocket and pulled out the sealed envelope which contained the five photographs. The envelope had both Deborah J. Peel's and Gary E. Peel's signatures on the outside flap and the

---

[1]Debbie Peel is a creditor of the defendant's bankruptcy action.

date of 1-31-06.   The search warrant for his car was also executed and bankruptcy and divorce papers were taken from four boxes in the back of the car.

The defendant was taken back to the United States Attorney's Office in Fairview Heights, Illinois, where he was met by his then attorney, Clyde Kuehn.  At the office, the defendant, after being given an opportunity to talk with his attorney, signed a proffer letter and gave a statement to officers and prosecutors.  A main concern of the proffer was whether there were other copies of the photographs, and the defendant,  when asked, indicated that there were no other copies.   He also indicated that there were no pictures at his office. In addition, he was asked if he had sent threatening mail to Debbie Peel's residence, which he denied doing.  He also denied threatening to send copies of the photographs to Debbie Peel's parents. This statement is in contrast to the recorded conversations between the defendant and Debbie Peel.

The proffer agreement was based on truthful cooperation.   Based on what appeared to to them to be a candid proffer at the time, the agents called off other agents who were on standby to execute the search at the law office.   The defendant indicated that the copies had been made on his printer at home, which he agreed to turn over to the agents.  In addition, he consented to a search of his office.  Based on his representations, the agents did not believe that there were any photographs at his office at the Lakin Law Firm in Alton, Illinois.  Peel did indicate that the copies had been with him at his office, but before that had been kept at his home.   This differed from the recorded conversations, where he indicated to Debbie Peel that he had kept those photographs at his office.   He indicated that the pictures had actually been taken at his former office at Reed, Armstrong, Gorman and Coffey, but that he had later stored them at his office at Peel, Beatty and Motil.

4

The defendant also indicated that he had made no other copies of the photographs, and that there were none in his office at the Lakin Law Firm.   This, however, turned out to be a false statement, because  Special Agent Jiminez testified that during the search of his office at the Lakin Law Firm she found torn up pieces of photographs the trash can in the defendant's office. The search occurred after his proffer, when the defendant went to his office to meet the agents for the search.   A consent to search form was executed by the defendant, who then attempted to limit the search to just photographs.  Jiminez testified that the defendant was specifically asked if he knew where any photographs they were looking for might be located, and he pointed to his credenza which had several framed family photographs.  She stated that he was behaving arrogantly and when the torn up photographs were found he was not happy. After the search of the office, Agent Kelly met the defendant at his home where he turned over his printer.  In light of the photos that were found in the office, two additional search warrants were obtained, one for his residence and the other for his office. These warrants were served on February 3, 2006.  No additional photographs were found.

On February 14, 2006, the defendant and his attorney went to the United States Attorney's Office for a second proffer.   At that time the photographs found at the office were discussed.  He indicated that he had attempted to make copies, but that the first couple of tries were not successful and he ripped up the photos and put them in the trash.

The proffer letter provides that the defendant's statements to the government will be "off-the- record" and that no statement of information provided by the defendant will be used against him at trial.  It further provides that the government may make derivative use of any information revealed during the proffer and pursue any investigative leads.   It further provides that if the

defendant is a witness in any future trials and provides testimony that is materially different from that provided during the proffer, the government may cross-examine the defendant about the differences.  It also includes the following language, "Your client should understand that by agreeing to make an 'off-the-record' proffer your client waives the right to any *Kastigar*-type objection and, by extension, to a *Kastigar* hearing."   Further, "you should know that before any offer is accepted, the government will assess whether your client was <u>completely</u> truthful during the 'off-the-record' proffer or discussion.  The determination of whether your client has been completely truthful is within the sole discretion of the government and if the government does not determine that your client has been <u>completely</u> truthful, we will not even consider the plea agreement offer you may make."  (Emphasis in original).

<u>ANALYSIS</u>

In the motion the defendant seeks to preclude the government from introducing any evidence revealed during the proffer process.  The basis for the motion is that the validity of the proffer agreement should not be based on the government's assessment of the defendant's veracity, and that under the terms of the agreement the issue of "truthfulness" applies only to the government's decision whether or not to enter into a plea agreement with the defendant. Therefore, the defendant argues, the government should not be able to use any of the defendant's statements against him at trial, essentially seeking to suppress this evidence.

In addition, the defendant asserts that the proffer agreement does not cover the production of tangible items, and, therefore, the acts of production, primarily turning over the printer to the government, should be determined to be "testimonial," subject to the proffer agreement,  and should not be admissible at trial.

6

The government argues that throughout the proffer sessions, the defendant was asked for truthful and full cooperation, and that the fact that the government agents recovered torn up copies of the photographs from his office trash can, after he had denied that any other copies existed, is sufficient proof that he was neither candid nor truthful with the government.

1.    Nature of Proffer Agreements

The Seventh Circuit has held that, "A proffer agreement, . . . is considered to be a contract.  Therefore, it must be enforced according to its terms."  *United States v. Reed*, 272 F.3d 950, 954 (7th Cir. 2001).   When reviewing a contract, the Seventh Circuit has held that courts should interpret the contract as a whole and construe the language therein according to its plain and ordinary meaning. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1038 (7th Cir.1998). The defendant's interpretation of the conditions of the proffer agreement with respect to his obligation to be candid strains any plain or ordinary interpretation of the terms of the agreement. Clearly, the purpose of the proffer agreement, and indeed of the entire process of proffering,  is to give the defendant the opportunity to cooperate with the government in exchange for a plea agreement.   By its very nature, the proffer process is clearly based upon the premise, and its language ensures, that the defendant, in entering into the proffer, understands that cooperation and candor are critical to the acceptance of his offer to talk in exchange for the government's consideration of a plea.   The government, under the plain language of the proffer agreement, retains the exclusive ability to determine, indeed to judge, the level of candor which occurs during the proffer process.

The hearing revealed that the defendant was certainly less than candid during his proffer. He clearly did not tell the truth with respect to the existence of other copies of the photographs in

7

question.  Under any plain understanding of the term "candor," the defendant simply did not satisfy his obligation under the proffer agreement.  It is irrelevant what the defendant's motivation was for not being fully truthful.  Whether he had expected the photographs to be removed from the trash before the search by the agents simply does not  change the fact that copies of the photographs existed, and he denied that fact

Furthermore, the hearing also revealed another failure of the defendant to be fully truthful in his proffer.  Although the defendant denied to the government that he had threatened to mail the photographs to his former wife's parents, the recorded conversations between the defendant and Debbie Peel strongly indicate that the defendant had previously made that kind of a threat to Debbie Peel.   To read the proffer agreement in the manner the defendant proposes would be to totally undermine the nature of the proffer process, and is contrary to the clear language of the letter.  Truthful cooperation is the foundation of the agreement.  Without that, there simply is no agreement, and, under the plain language of the agreement, the defendant waived any challenge he might raise under *Kastigar v. United States,* 406 U.S. 441 (1972).

The Court similarly rejects defendant's argument that any tangible items should be suppressed.  Clearly, once the defendant told the government about the existence of the printer, it then became a "foregone conclusion" that the government would find the printer.  *See Fisher v. United States,* 425 U.S. 391, 410 (1976).  The record does not reveal that Peel was in any manner compelled to produce the printer, but even if that were the case, he still would not be entitled to suppression of that evidence.  *Fischer*, 425 U.S. at 410, because at that point, "[t]he question is not [one] of testimony but of surrender." *Id.* at 412.

Therefore, to the extent that the defendant seeks to suppress the evidence revealed during

8

his proffer, including statements and tangible items, that motion is denied.

2.     Effect of _Krilich_ on the Introduction of Evidence by the Government

It is well settled in this Circuit that once the defendant has entered into a proffer agreement, if he then offers evidence or arguments at trial inconsistent with the information provided in his proffer, the government may introduce the contents of the proffer. _See, United States v. Krilich_, 159 F.3d 1020 (7th Cir. 1998) and _United States v. Dortch_, 5 F.3d 1056, 1066-67 (7th Cir.1993). In _Dortch,_ the Seventh Circuit held that under "the plain language of the proffer agreement, the only limitation on the government's use of the proffer statements was that the government could not introduce the statements during its case-in-chief."  5 F.3d at 1068. The Court notes that the proffer agreement in _Dortch_ was similar to the agreement used in this case.  The court in _Dortch_ held that the defendant "waives any objection to the government's use of proffered statements when the proffer agreement allows such use."  _See id.; see also United States v. Cobblah_, 118 F.3d 549, 551 (7th Cir.1997) ("As a contract, a proffer agreement must be enforced according to its terms[, and] [i]t is the language of the contract that binds the parties.").

In _Krilich,_ the court held that the government could use the proffer statement of the defendant against him at trial if the defendant took a position contrary to the substance of the proffer.  The court stated: " Introduction of the statements [made during the proffer] thus was proper if either [the defendant's] testimony or evidence that he presented through the testimony of others contradicted the proffer." 159 F.3d at 1025.  This is true whether the evidence is elicited through the defendant's own witnesses, through the cross-examination of government witnesses, or through the "arguments of counsel alone." _Id._   The defendant can, therefore, avoid the introduction of the statements if he does not attempt to introduce inconsistent evidence.

9

"Statements are inconsistent only if the truth of one implies the falsity of the other." *Id.* at 1025-26.

Accordingly, the Court **FINDS** that if the defendant offers evidence contrary to that given in his proffer, the Court will allow the government to admit evidence with respect to matters revealed during his proffer.  The defendant, under the terms of the proffer,  has waived any objection to the government's use of that proffer in the government's rebuttal because the proffer agreement permits such use. *Id. See also, United States v. Williams,* 298 F.3d 688 (7th Cir. 2002).

Put simply, when a defendant enters into a proffer agreement he has an obligation to be truthful, and the government is in the position to determine the level of truth and candor that occurred during the proffer.   The Court should not, and will not, interfere with that determination.  It is appropriate to hold the defendant to the terms of the letter, and to allow the government to be the ultimate judge of whether the defendant is entitled to the benefits of the proffer agreement, including whether a plea agreement is warranted.

Accordingly, the Court **DENIES** defendant's motion in limine, construed as a motion to suppress, on all grounds raised.


**IT IS SO ORDERED.**

**DATED: December 22, 2006**


                                                     _____s/ WILLIAM D. STIEHL_____
                                                         **DISTRICT JUDGE**