IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06-CR-30049-WDS |
| ) | |
| GARY E. PEEL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court on defendant's motion for a new trial (Doc. 152), to which the government has filed a response (Doc. 153). The defendant asserts that there were several errors committed during the trial which denied him a fair trial, e.g. that the court gave improper jury instructions; excluded evidence that prevented the defendant from presenting a complete defense; that the evidence was insufficient to support the defendant's conviction, and that based on these errors, he is entitled to a new trial.

## MOTION FOR NEW TRIAL

The Seventh Circuit has held that a motion for new trial should be granted "only if the evidence 'preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (*quoting United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (other citations omitted)). "We view the evidence in the light most favorable to the government, recognizing that it is the exclusive function of the jury to determine the credibility of witnesses and draw reasonable inferences." *United States v. Theodospoulos,* 48 F.3d 1438, 1444 (7th Cir. 1995) *quoted in Swan*, 486 F.3d at 266.

## **BACKGROUND**

The defendant was convicted of all charges in the indictment.  Count 1 of the Indictment charged the defendant with bankruptcy fraud, alleging that between January 20 and January 31, 2006, the defendant knowingly and fraudulently gave, offered, received and attempted to obtain money and property, remuneration, compensation, reward, advantage and promise thereof for acting and forbearing to act in a case under Chapter 11 of the Bankruptcy Code, all in violation of 18 U.S.C. § 152(6). Count 2 charged the defendant with obstruction of justice alleging that between January 20 and 31, 2006, the defendant did knowingly and corruptly attempt to obstruct, influence, and impede an official proceeding, all in violation of 18 U.S.C. § 1512(c)(2).

Counts 3 and 4 charged the defendant with possession of child pornography. Specifically, Count 3 charged that on or about January 20, 2006, the defendant knowingly possessed material that contained an image of child pornography that was produced using materials that had been mailed and shipped and transported in interstate and foreign commerce that was placed in the mailbox of the defendant's ex-wife, all in violation of 18 U.S.C. § 2252A(a)(5)(B).

Count 4 charged that on or about January 31, 2006, the defendant knowingly possessed material that contained an image of child pornography that was produced using materials that had been mailed and shipped and transported in interstate and foreign commerce, namely a color photograph containing images of a child, that was located on the person of Gary E. Peel,  all in violation of 18 U.S.C. § 2252A(a)(5)(B).

## ANALYSIS

1. The Jury Instructions

   a. Possession of Child Pornography Counts

The defendant asserts that the Court improperly refused to give an instruction on the question of lasciviousness, i.e. the defendant's subjective intent in taking the photographs in question. The defendant sought to have the jury instructed that his intention when he took the photograph was irrelevant to the determination of whether the image met the definition of child pornography. The photographs in question involved the depiction of a young girl, who the evidence at trial revealed was sixteen years old, naked on the floor of an office (the defendant's then law office) with her legs spread, and the focus of the photo being her pubic area.

"Child pornography" is defined in 18 U.S.C. § 2256(8) as "any visual depiction, including any photograph. . . of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct. . . ."  The Court instructed the jury on the definition of "sexually explicit conduct"[1], on the definition of "lascivious"[2] and on the six-factors used to determine whether an image is lascivious as set forth in *United States v. Dost*, 636 F. Supp 828, 932 (S.D. Cal. 1986) *aff'd sub nom. United States v. Wiegland,* 812 F.2d 1239 (9th Cir. 1987); *see also, United States v. Moore*, 215 F.3d 681, 686 (7th Cir. 2000)[3].

---

[1] Which was defined as "the actual or simulated lascivious exhibition of the genitals or pubic area of any person."  (Government's Instruction #26).

[2] Which was defined as "that which tends to arouse sexual desires."  (Government's Instruction #4).

[3] The six-factor test used to determine whether an image is lascivious is  "(1) whether the focal point is on the child's genitalia or pubic area; (2) whether the setting is sexually suggestive, *i.e*. in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual

The defendant asserts that the Court's failure to give an instruction on his subjective intent expanded the scope of the statute beyond its plain language in violation of his Fifth Amendment rights.  He also asserts that failure to give the subjective intent instruction allowed the jury to consider the testimony of Donna Rogers relating to how the photos were produced, including the fact that the defendant posed Rogers for the photographs. The defendant asserts that
because the jury had heard evidence that the defendant and Rogers had a sexual relationship at the time the photographs were taken, this allowed the jury to weigh his subjective intentions anyway when determining whether the photographs met the criteria for child pornography.

In this case, the jury had the images to review and were able to determine, based on the instructions given, whether the intended effect of the images met the definition instructions and the six-factor *Dost* test for lasciviousness.  The Court remains persuaded that the personal fantasies or personal reaction to the photographs is not relevant to the jury's determination of whether the images were designed to elicit a sexual response from the viewer.  The Government did not question the defendant on whether he personally was aroused from the images, nor did it argue that to the jury.   In this case, the photos, on their face "appear[ed] to be of a sexual character."  *United States v. Kimmerling,*  285 F.3d 644, 646 (8th Cir. 2002).   The Ninth Circuit in *Wiegland* (affirming the conviction in *Dost*) held that lascivious is "no different in its meaning than 'lewd' a commonsensical term whose constitutionality was specifically upheld" by the Supreme Court.  812 F.2d at 1243-44.  Although the Ninth Circuit noted that "private fantasies

---

depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *See, Moore*, 215 F.3d at 686.  (Government's Instruction #27).

are not within the statute's ambit" *id.* at 1245, it, nonetheless, stated:

> The picture of a child "engaged in sexually explicit conduct" within the meaning of 18 U.S.C. §§ 2251 and 2252 as defined by §2255(2)(E) is a picture of a child's sexual organs displayed lasciviously–that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.

*Id.* at 1244. Upon review of the record, the Court remains persuaded that the jury was properly instructed on the issues raised by the charges in Counts 3 and 4 and, therefore, DENIES defendant's motion for a new trial on this ground.

### b. Silence in the Face of Accusation

The defendant asserts that the Court erred when it gave the jury an instruction relating to the defendant's silence in the face of accusation by the defendant's former wife during a telephone call.[4] In that conversation, Deborah J. Peel accused the defendant of "blackmail" and he did not respond to the charge. The defendant was not under arrest at that time, and the defendant testified at trial as to the conversation and acknowledged that he did not respond to her assertion of blackmail.

Pursuant to Fed. R. Evid. 801(d)(2)(B) evidence of silence in the face of an accusation is admissible when the defendant is an active participant and a person confronted with such an accusation would normally deny it. "[S]ilence qualifies as an admission because [the] accusation is the type of statement that a party normally would respond to if innocent." *United States v. Ward*, 377 F.3d 671, 676 (7th Cir. 2004). The *Ward* court referenced the Advisory

---

[4] "You have heard evidence that Deborah J. Peel accused [the] defendant of 'blackmail,' and that the defendant did not deny or object to the accusation. If you find that the defendant was present and heard and understood the accusation, and that it was made under such circumstances that the defendant would deny it if it were true, then you may consider whether the defendant's silence was an admission of the truth of the accusation." (Government's Instruction #9).

Note to this rule which states, "When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue." *Id.* The jury not only heard the recorded conversation, but also heard the defendant's explanation of that conversation during his testimony at trial. There is no question that the defendant was present when the accusation was made, that he heard it and understood it.

The defendant asserts that the insertion of the term "blackmail" for the language in the pattern instruction "crime" suggested to the jury that his failure to deny the accusation was a confession as a matter of law. The Court **FINDS** that under the circumstances of this case it was proper to give the pattern instruction to the jury on the fact that it could consider "whether the defendant's silence was an admission of the truth of the accusation." 7th Circuit Pattern Jury Instruction 3.03. The jury was not instructed that the silence was an admission as a matter of law, but rather that the jury could consider that fact in its deliberation, and decide if it amounted to an admission. Accordingly, the Court **DENIES** defendant's motion for new trial on this ground.

  2. Evidence Related to Deborah J. Peel

The defendant renews his argument made before and during trial that he should have been able to present evidence relating to Deborah J. Peel's alleged misappropriation of funds, her use of joint account funds for a face lift, her bias, untruthfulness, and state of mind, as this evidence was relevant to her credibility as a witness. The Court issued a ruling on these issues as part of its pretrial determination of the government's motion in limine (Doc. 113). The Court found that this evidence was not relevant to the charges in this case, and did not amount to a defense to those charges, and therefore was not relevant and would not be admitted.

The defendant asserts that the improper use of funds, and her explanation about her spending choices was relevant to her credibility, no matter how proper her access to the funds may have been.  The defendant asserts that she misappropriated funds from several joint accounts that were part of the Marital Settlement Agreement.  However, the Court found that the record revealed that Deborah J. Peel had access to those accounts, and therefore, the defendant could not establish that she did anything wrong with the funds in those accounts because they were hers to use.

The Court further found that even if the defendant could have established that she did inappropriately use the funds, that fact would not be a defense to the charges in this case.  This is a strawman argument which is of little help to the defendant's case.  It is rather like saying, "I had no money to feed my children, so I robbed the bank."  The fact that there was no money and there were hungry children, is not a defense to the charge of bank robbery.  Similarly, the defendant's claim pretrial and during trial that Deborah J. Peel's alleged use of funds led him to be in financial difficulty, and then to commit bankruptcy fraud and obstruction of justice by threatening her with the exposure of the photographs of her sister (the child pornography) is not a defense to either the charge of bankruptcy fraud or obstruction of justice.   Exclusion of this evidence simply did not deprive the defendant of a "complete defense."

Similarly, the Court is not persuaded that the state of mind of Deborah J. Peel was relevant.  The government did not seek to introduce any out-of-court statements, and the defendant was able to cross-examine Deborah J. Peel at length about her displeasure with the defendant's attempts to set aside the marital settlement agreement.  It was evident that she was not pleased with that settlement, and the jury could easily judge both her credibility and her bias

against the defendant, and thereby determine her possible motive for the nature of her testimony. The Court, therefore, properly rejected the defendant's attempt to introduce evidence of her state of mind.

The Court remains persuaded that its ruling (Doc. 113) was proper given the charges in this case, and the defendant has forwarded nothing new which would cause the Court to revisit that ruling. Accordingly, defendant's motion for a new trial on the basis that the Court improperly excluded evidence related to Deborah J. Peel is **DENIED** on all grounds raised.

### 3. Defendant's Expert

The Court set limits on the possible testimony of defendant's proposed expert, Thomas L. Hoops, as part of its pretrial rulings. The defense did not attempt to call Mr. Hoops after the testimony of the defendant. The defendant has raised no new grounds in this part of his motion. The defendant seeks a new trial in which the Court would allow Hoops to testify as to the defendant's financial position relative to his ex-wife during their negotiations on the marital settlement, asserting that his financial position is relevant to his intent at the time of the incidents that underlie the charges in this case. However, this is the same evidence which the Court previously discussed as non-relevant to the charges. The government did not challenge the propriety of the defendant's filing of his bankruptcy petition, therefore, his financial condition at the time it was filed, his intent in filing the bankruptcy, or how generous his offers were to his ex-wife with respect to the marital settlement remain irrelevant to the charged offenses. The record contains the Court's prior rulings with respect to the possible testimony of Hoops, and the Court, for the same reasons, **DENIES** defendant's motion for a new trial on this ground.

    4.    <u>Testimony of Marianne Dilman</u>

The defendant renews his objections raised at trial to the testimony of Marianne Dilman who was called by the government to establish the location of Polaroid manufacturing facilities in order to establish that the film used to take the photographs of Rogers was not manufactured in Illinois.  The government called Dilman as a fact witness, not as an expert, however, the defendant objected, asserting that she was an expert witness.  During the trial the Court ruled that she was an historical facts witness, and not an expert, and allowed her to testify using records provided to her by her employer.  Ms. Dilman testified as to the business practices of Polaroid, based upon the records kept by the business.  "Businesses have incentives to keep accurate records germane to their business, and so the material contained in those records is more likely to be truthful than the average hearsay." *United States v. Santos*, 201 F3d 953, 963 (7th Cir. 2000).  Further, "But[,] that is provided that this material–the statements sought to be used in evidence for their truth value–was created or adopted by the business record keeper." *Id.* Here the records about which Ms. Dilman testified, those records establishing that Polaroid did not have plants in Illinois that processed the film used to take the photographs in question, was proper testimony under the business records exception of Rule 803.  Accordingly, the Court **DENIES** defendant's motion for new trial on this ground.

    5.    <u>Whether the Government Proved that the Child Pornography was made with Materials  that Traveled in Interstate Commerce.</u>

The defendant asserts that there was no evidence that the paper and ink, the component materials of the photographic paper, used to make the copies of the photographs of Rogers were made outside Illinois.  The defendant's argument is, essentially, that the original photos were copied by the defendant, and that there is no proof that the photocopy component materials

9

were manufactured outside of Illinois.  The statute provides that the child pornography was "produced using materials" that had traveled in interstate commerce.

Count 3, as discussed above, charged that the defendant knowingly possessed material that contained an image of child pornography that was produced using materials that had been mailed and shipped and transported in interstate and foreign commerce that was placed in the mailbox of the defendant's ex-wife, all in violation of 18 U.S.C. § 2252A(a)(5)(B).  Count 4 charged that the defendant knowingly possessed material that contained an image of child pornography that was produced using materials that had been mailed and shipped and transported in interstate and foreign commerce, namely a color photograph containing images of a child, that was located on the person of Gary E. Peel,  all in violation of 18 U.S.C. § 2252A(a)(5)(B).  The evidence was that the photocopier traveled in interstate commerce. That photocopier was used to make the copies, therefore, satisfying the statutory requirements for interstate travel.  Similarly, as discussed above, the Polaroid paper on which the original photographs were taken traveled in interstate commerce, thereby satisfying the statutory requirements for those charges.

Accordingly, defendant's motion for a new trial on the grounds that the government failed to prove interstate travel is **DENIED** on all grounds raised.

      6.      The Scienter Requirement of 18 U.S.C. § 2252A

Finally, the defendant asserts that the government failed to establish that the girl depicted in the photographs was a child.  The defendant argues that the girl in the photographs appears to be sexually mature, and at the time of the taking of the photographs, the sexual relationship between Peel and Rogers was legal under Illinois law. The defendant asserts that

with respect to the photographs and Donna Roger's age, although he may have known her age at the time he took the photographs, he did not remember her age at the time of the photographs when he possessed them in 2006, the time of the charged offenses of possession of child pornography.

Here, the evidence was that the defendant knew the subject of the photographs as his wife's younger sister. There was a plethora of evidence as to her age at the time the photographs were taken. The defendant's testimony that he thought she was eighteen was presented to the jury, but the jury apparently did not find him to be credible on this point. The Court finds no basis for granting a new trial on this ground and the defendant's motion is **DENIED**.

## CONCLUSION

Accordingly, the Court **DENIES** defendant's motion for a new trial on all grounds raised.

**IS SO ORDERED.**

**DATED: July 23, 2007.**

                                                  **s/ WILLIAM D. STIEHL**
                                                      **DISTRICT JUDGE**